UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO.: 04-30111-KPN

| | |
|---|---|
| JOSE QUINONES,      )<br>    Plaintiff    )<br>    )<br>vs.    )<br>    )<br>HOUSER BUICK,    )<br>    Defendant    ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### SUMMARY OF ARGUMENT

The central issue in this case is whether the Defendant discriminated against the Plaintiff on the basis of his national origin in the terms and conditions of his employment by allegedly paying him less than white employees. Ordinarily, claims for failure to pay wages flow out of M.G.L. c. 149, § 148, Payment of Wage Statute, which is enforced pursuant to M.G.L. c. 149, § 150, a statute that allows for injunctive relief and damages, including treble damages for any loss of wages and other benefits as well as attorneys' fees and costs.

The Plaintiff seeks to recover wages, however, under the rubric of M.G.L. c. 151B and Title VII, yet the plaintiff does not bring a claim of wrongful discharge, only "wrongful payment of wages." The plaintiff worked at the Collision Repair Center of the Houser Buick organization on three separate occasions, stretching from February 27, 1990 to the day he voluntarily quit, on March 28, 2003. Each and every day he worked at Houser Buick, Kevin O'Connor has been his manager. Mr. O'Connor hired the Plaintiff on three separate occasions, had a generally good working and personal relationship with the Plaintiff, and scrupulously explained every week to the Plaintiff how Houser Buick computed his compensation.

At his request, Houser Buick paid Mr. Quinones on the "flat rate" system.  That is, it paid him not on an hourly basis, but rather on the basis of a flat rate for completing a particular job.  If a particular repair job had been budgeted at 5 hours, the technician or painter would receive pay for that amount.  If the technician could do the job in less time than that, he could make a premium wage.

It is hard to be a flat-rate technician.  One has to be well organized, quick and accurate in one's work.  Houser Buick employed Wayne Barnes, an extremely capable, organized and productive Caucasian technician.  Mr. Quinones chafed under the flat-rate system, since Mr. Barnes succeeded better financially.  Mr. Quinones simply did not understand the system, and indeed after years of litigation, both in the MCAD and this Court, Mr. Quinones still could not articulate how time was allocated on worksheets and how to read work orders properly.  Mr. Quinones did not, in the course of this litigation, provide a list of the dates, times and amounts he allegedly was underpaid, thus fatally undercutting his claim.

While cataloging a number of workplace slights in his deposition in the Answers to Interrogatories, the plaintiff has not shown, and cannot show at trial, that impermissible consideration of his national origin led to his not receiving proper pay.  While one can understand plaintiff's frustration because Wayne Barnes often spoke to other employees about how much more he was making than other employees, this rude behavior did not amount to actionable discrimination.

ARGUMENT

1. <u>The Gravamen of Plaintiff's Complaint Is that the Defendant Systematically Failed to Pay Him Properly Because of His National Origin.</u>

From the beginning of this litigation, this Court, as well as Defendant in discovery, requested that the Plaintiff state with particularity each and every day that he was not paid

properly and how much he was not paid. In spite of extensive discovery in the MCAD and this Court, the Plaintiff has never produced a list of each day and hour he was not paid, nor has he otherwise identified what specific work he was not properly paid for. *See generally,* Statement of Material Issues of Fact Not in Dispute ("Statement of Facts") at ¶ 14. This is so in large part because the Plaintiff does not understand the billing practices of the Defendant as applied to the flat-rate system the Plaintiff insisted on. *Id.* at ¶¶ 14 – 16, 20 and 22. A flat-rate system can spawn disputes and some employees do better than others under it. *See generally,* Statement of Facts, ¶¶ 7, 8 and 11. Kevin O'Connor sat down weekly with the body shop employees, including the Plaintiff, to go over the diaries which he required them to keep. The diaries included their time cards and their pay. The Defendant never hid data from the Plaintiff. *Id.* at ¶ 9.

The Plaintiff contends that each and every week for the last 4 years he worked at Houser Buick it cheated him. He also admits that the Dealer Principal of the Defendant, Philip Houser, passed out checks every week and that he had well over a hundred opportunities to raise with Mr. Houser the fact that he was not being paid properly, but he did not do so. *Id.*, ¶ 14. These exaggerations undercut his claim.

2. <u>Wayne Barnes Earned More than the Plaintiff Because He Understood and Worked the Flat-Rate System Better</u>.

The Plaintiff and the Defendant agree that Wayne Barnes was a fast and competent body shop technician. *See generally,* Statement of Facts, ¶ 7. Fellow employee Jeremy Laduke testified at his deposition at some length how knowledge of the flat-rate system was essential to prospering financially under it. Mr. Barnes knew the system inside and out, while the Plaintiff did not. *Id.* This factor, not discrimination, accounts for the wage disparity. As stated above, Wayne Barnes did not help the situation by lording over other employees his superior earning

392519

power.

3. <u>The Plaintiff's Allegations of Discrimination Did Not Stand Up to Scrutiny at His Deposition</u>.

Both in his MCAD Charge and his Answers to Interrogatories, the Plaintiff made a variety of allegations of a hostile work environment based on his national origin.  However, when pressed at his deposition, he simply could not supplement his allegations with facts.  *See* Statement of Facts, ¶¶ 16 – 24.

4. <u>At Best, the Plaintiff Documents Personality Conflicts with the Barnes Brothers and Mr. O'Connor</u>.

A mere personality conflict resulting in workplace conflict, absent more, is not grounds for a claim of employment discrimination.  See *Uhl v. Zalk Joseph Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997) ("personality conflict doesn't ripen into an ADA claim simply because one of the parties has a disability"); *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994) (holding that federal law "does not guarantee a utopian workplace, or even a pleasant one . . . personality conflicts between employees are not the business of the federal courts").  The Tenth Circuit's rationale in *Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211 (10th Cir. 1998), a case involving a claim of race-based hostile environment, lends guidance to the present case:

"Plaintiff falls short of making a showing of pervasive or severe harassment.  The record on appeal provides evidence of little more than a collection of unrelated incidents where Plaintiff and [his supervisor] were at odds.  Plaintiff was not subjected to anything that was physically threatening or humiliating . . . .  Plaintiff's list of grievances includes none of the racial comments or ridicule that are hallmarks of hostile work environment claims.  *The hostile work environment that Plaintiff portrays is simply a work environment that exhibits the monitoring and job stress typical of life in the real world.  Normal job stress does not constitute a hostile or*

392519

Case 3:04-cv-30111-KPN    Document 12    Filed 02/18/2005    Page 5 of 6

5

*abusive work environment.* . . . Plaintiff has not cited any cases that have found similar employer conduct to constitute a racially hostile work environment, and we decline to extend the contours of a "hostile work environment" to include Plaintiff's alleged job situation.

*Id.* at 1214 (*emphasis added*).

Similarly, the First Circuit has held that "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins - thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world." *Suarez v. Pueblo Intern*, 229 F.3d 49, 54 (1st Cir. 2000). In *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999), the First Circuit held that despite the fact that the plaintiff had clearly "toiled in a wretchedly hostile [work] environment," he failed state a claim under Title VII. As the court stated, "no claim lies unless the employee presents a plausible legal theory, backed by significantly probative evidence, to show, *inter alia*, that the hostile environment subsisted *because of* such individual's race, color, religion, sex, or national origin." *Id.* at 258 (*citation omitted*) (*emphasis added*).

In the present case, the Plaintiff cannot overcome the fact that he went to work for Houser Buick on three separate occasions, at all times working for the same manager, Kevin O'Connor. Although ultimately he may have been irked by some of Mr. O'Connor's comments and frustrated by his own inability to understand the flat-rate system, he has not proven discriminatory animus on Mr. O'Connor's part. Similarly, the Plaintiff may well have had legitimate grievances with Mark and Wayne Barnes, who may well have treated him poorly. Such friction with co-workers does not add up to discrimination.

This Court should also consider the fact that Mr. Quinones does not allege a constructive discharge. Typically in an employment discrimination case, if the workplace atmosphere was indeed pervaded by animus on the basis of a protected class such as national origin, the

employee would plead, and prove, that he had no option but to leave the workplace. Here, the Plaintiff has never alleged a constructive discharge, essentially conceding that the level of any "harassment" he felt on the basis of national origin was not legally sufficient to prove such a claim.

## CONCLUSION

Unfortunately, the Plaintiff never completely understood the flat-rate system and most likely sincerely believed it did not treat him fairly. However, after extensive discovery in this case, and before the MCAD, the Plaintiff has not, and cannot, tie discrimination to his earnings. Thus, this unusual gambit of trying to prove a wage claim through the lens of discrimination laws fails.

THE DEFENDANT
HOUSER BUICK

By    /s/ John C. Sikorski
John C. Sikorski, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.: 461970

## CERTIFICATE OF SERVICE

I, John C. Sikorski, Esq., hereby certify that on this 18th day of February, 2005, I served a copy of the above upon the parties in the action by mailing, postage prepaid, to counsel, Steven R. Weiner, Esq., 920 Main Street, Springfield, MA 01103.

Subscribed under the penalties of perjury.

   /s/ John C. Sikorski
John C. Sikorski, Esq.

392519