UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO.: 04-30111-KPN

| | |
|---|---|
| JOSE QUINONES,   Plaintiff | ) ) ) |
| vs. | ) ) |
| HOUSER BUICK,   Defendant | ) ) |

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF
MATERIAL ISSUES OF FACT NOT IN DISPUTE**

INTRODUCTION

The Defendant submits the detailed affidavit of its body shop manager, Kevin O'Connor, as Exhibit 2, as well as extensive excerpts from Plaintiff's own deposition. Taken together with portions of depositions from other witnesses, a picture emerges of a case in which this Court can grant summary judgment.

1. The Plaintiff worked for the Defendant on three (3) separate occasions, first in 1990, then in 1993, and finally in 1999. His first employment was from February, 1990 through August, 1991, at which time he was terminated for excessive tardiness/absenteeism. *See* Quinones deposition transcript, attached hereto as Exhibit 1, at p. 21; *see,* also, Affidavit of Kevin O'Connor, attached hereto as Exhibit 2, at ¶ 12. His second employment was from September, 1993 through December, 1995, at which time he was laid off. *See,* Exhibit 1, at pp. 22, 25; *see,* also, Exhibit 2, at ¶ 8. His third employment was from March, 1999 through March, 2003. *See,* Exhibit 1, at p. 26; *see,* also, Exhibit 2, at ¶ 9.

2. On all three (3) occasions during which the Plaintiff worked for the Defendant, he worked for Kevin O'Connor, the manager of Houser Buick Collision Repair. The Plaintiff

392325

contends that Kevin O'Connor was the only individual that discriminated against him on the basis of his national origin. The plaintiff alleges that O'Connor treated him in a discriminatory manner on each and every occasion that he worked for Houser Buick. He returned to Houser Buick knowing that he would go to work for Kevin O'Connor, a person he alleges in his deposition was biased against him. *See*, Exhibit 1, at p. 16.

    3. During the Plaintiff's courses of employment with the Defendant, Kevin O'Connor performed a series of favors for the Plaintiff:

        a. Kevin O'Connor hired the Plaintiff's nephew, Nelson Rodriguez; *see,* Exhibit 1, at p. 18;

        b. Kevin O'Connor allowed the Plaintiff's son to accompany him to the body shop; *see,* Exhibit 1, at p. 20;

        c. Kevin O'Connor allowed the Plaintiff to do "side-jobs" on Saturdays; *see,* Exhibit 1, at p. 29;

        d. The Plaintiff was sent to frame school to get training; *see,* Exhibit 1, at p. 32; and

        e. Kevin O'Connor agreed to the Plaintiff's request in November 1999 to go from being paid on an hourly basis to being paid on a flat rate; *see,* Exhibit 1, at pp. 52 - 54. The plaintiff remained on flat rate until he quit in March, 2003.

    4. The Plaintiff and Kevin O'Connor socialized on several occasions:

        a. the Plaintiff attended the Frank Maratta show at the Connecticut Expo Center with his 11 year old daughter, as well as Kevin O'Connor, in February, 2003; *see,* Exhibit 1, at pp. 18 - 19; and

        b. the Plaintiff attended the Winston Cup NASCAR Race in Loudon, NH with Kevin O'Connor, who supplied the tickets; *see,* Exhibit 1, at p. 19.

        c. Kevin O'Connor visited Mr. Quinones's home on several occasions. *See* Exhibit 2, ¶ 16.

    5. Phil Houser, the Dealer Principal of the Defendant, hands out checks directly to body shop employees, thus visiting the body shop nearly every week. *See,* Exhibit 1, at pp. 10 - 11. In the four years that he worked for Houser Buick, the Plaintiff never went to see Mr. Houser about

392325

an environment that he felt was discriminatory. S*ee,* Exhibit 1, at p. 27; *see,* also, p. 15. The Plaintiff did not find Phil Houser to be intimidating. *See,* Exhibit 1, at p. 25.

6. Phil Houser had a well-known "open-door" policy. *See,* deposition transcript of Jeremy Laduke, attached hereto as Exhibit 3, at pp. 21 - 22.

7. The Plaintiff admits that Wayne Barnes is a fast and competent auto body technician. *See,* Exhibit 1, at p. 36. It was apparent that Wayne Barnes was a very capable, highly productive flat-rate employee. *See* Exhibit 3, at pp. 15 - 20. *See,* generally, Exhibit 2, at ¶ 13.

8. Flat rate compensation is more complex than hourly rate compensation, and "Nino (the Plaintiff)" "…had a really hard time gripping it." *See,* Exhibit 3, at pp. 16 – 18; *see*, also, Exhibit 2, at ¶¶ 6, 13. To make more money on flat rate, one must be fast, well organized and have a good understanding of how repair jobs are billed. *Id*, at ¶¶ 6, 13. Wayne Barnes had such an understanding, but Mr. Quinones did not. Although Mr. Quinones was a good worker, he was slower and did not understand the way jobs were billed. *See generally,* Exhibit 3, at pp. 15 – 18; Exhibit 2, at ¶ 13.

9. Kevin O'Connor sat down weekly with the body shop employees, including the plaintiff, to go over their diaries, which he required them to keep. The diaries included their time cards and their pay. *See*, Exhibit 1, at pp. 55 - 56.

10. The Plaintiff compares himself, primarily, to Wayne Barnes.

11. The Plaintiff's current employer, St. James Custom Auto Body, is not paying him at a flat rate. Angel Delrio, the owner and general manager of St. James Custom Auto Body, believes that flat rate compensation causes misunderstandings between employees and employers. *See,* deposition transcript of Angel Delrio, attached hereto as Exhibit 4, p. 15.

12. Jose Quinones quit Houser Buick voluntarily; *see,* Exhibit 1, at pp. 11 – 12; *see*, also, Exhibit 2, at ¶ 9. He does not claim wrongful discharge. He simply alleges that he was paid less

than white employees and visitors to him were treated differently. *See,* Amended Complaint, at ¶ 10 and Exhibit 1, at p. 54. In his Answer to Interrogatories, Exhibit 6, he lists other incidents of alleged disparate treatment. *See*, Exhibit 5, Answer to Interrogatory No. 5.

13. The Plaintiff filed a sparse Charge of Discrimination on April 22, 2003. *See,* Exhibit 6.

14. The Plaintiff alleges he was not paid the full amounts due and owing to him from the first week he went on flat rate, November 5, 1999, to March 21, 2003. *See,* Exhibit 1, pp. 54 - 55. In spite of being allegedly underpaid for four years, he did not complain to Phil Houser during the entire four-year period, s*ee,* Exhibit 1, at p. 27; nor did he consult an attorney, *see* Exhibit 1, pp. 54 - 56.

15. The Plaintiff has never produced a list of each day and hour he was not paid, nor has he otherwise identified what specific work he was not properly paid for. *See,* generally, Exhibit 1, pp. 101 - 104. This is so in large part because the Plaintiff does not understand the billing practices of the Defendant. *See,* generally, Exhibit 2, at ¶ 18.

16. The Plaintiff alleges in Count II of his Amended Complaint that the Defendant failed to accommodate him. *See,* Amended Complaint, at ¶¶ 77 – 78. By failing to accommodate, the Plaintiff essentially means failing to treat someone fairly. *Id.* The Plaintiff cannot remember dates of various allegations of wrongful conduct. *See,* generally, Exhibit 1, p. 90 - 92.

17. In his Answers to Interrogatories, and in support of his claims, the Plaintiff alleged that he was subject to racial comments, directed to both him and other Hispanic employees. *See,* Exhibit 5, Answer to Interrogatory No. 5. However, at his deposition, the Plaintiff was unable to recall specific dates for this allegation. *See*, Exhibit 1, at p. 90.

18. In his Answers to Interrogatories, and in support of his claim, the Plaintiff alleges that he was subject to "off color and rude comments" made by his manager, Kevin O'Connor. *See,*

Exhibit 5, Answer to Interrogatory No. 5, only some of which deal with national origin. However, the Plaintiff also made such "off color and rude comments" regarding the national origin of Kevin O'Connor. *See*, Exhibit 2, at ¶ 15.

19. In his Answers to Interrogatories, and in support of his claim, the Plaintiff alleged that his guests were treated differently than the guests of White employees. *See,* Exhibit 5, Answer to Interrogatory No. 5. However, at his deposition, the Plaintiff was unable to state specific dates for the incidents in which he claims that the visitors of White employees were treated than his visitors. Likewise, he was unable to state the names of any of the visitors of White employees that were treated differently that his visitors. *See*, Exhibit 1, at pp. 76 - 77.

20. In his Answers to Interrogatories, and in support of his claim, the Plaintiff alleged that he was paid improperly based on the hours that he worked, specifically reflected in work orders (Nos. 15007 and 16467) attached to his Answers to Interrogatories. *See,* Exhibit 5, Answer to Interrogatory No. 5; *see*, also, Exhibits A and B to Exhibit 5. However, at his deposition, the Plaintiff demonstrated that work orders and estimates were different documents, but that he believes these two (2) documents should be the same. *See*, Exhibit 1, at pp. 93 – 95. Further, in order to accurately assess the amount that an employee should be paid for a job, the employee must review both the work order and estimate which correspond to a particular job. *See*, Exhibit 2, at ¶ 21.

21. In his Answers to Interrogatories, and in support of his claims, the Plaintiff alleges that he was subject to extraordinary scrutiny. *See,* Exhibit 5, Answer to Interrogatory No. 5. However, at his deposition, he was unable to justify his contention that he was subjected to such scrutiny. *See*, Exhibit 1, at pp. 55, 106 – 107.

22. In his Answers to Interrogatories, and in support of his claim, the Plaintiff alleged that he was discriminated against based on the difference between himself and Wayne Barnes, a

392325

6

White male who worked as an auto body technician for Houser Buick Collision Center.  *See,* Exhibit 5, Answer to Interrogatory No. 5.  However, at his deposition, the Plaintiff specifically stated that Wayne Barnes was a competent and fast worker.  *See*, Exhibit 1, at p. 36.

23.    The Plaintiff claims that he, as well as other Hispanic employees, was forced to work from estimates that cheated him out of time actually spent repairing a vehicle.  However, the Plaintiff is only able to recall one (1) other employee, George, who was allegedly underpaid, and is unable to recall George's last name.  *See*, Exhibit 1, at p. 60 - 63.

24.    The Plaintiff claims that he heard Kevin O'Connor make comments to "several other Hispanic employees".  However, at his deposition, the Plaintiff could not recall the names of those employees.  *See*, Exhibit 1, at p. 23.

25.    The Plaintiff never filed a claim for unpaid wages with the Wage and Hour Division of the Massachusetts Attorney General's Office pursuant to M.G.L. c. 149, §§ 148, 150.

                                        THE DEFENDANT
                                        HOUSER BUICK


                                        By    */s/ John C. Sikorski*
                                        John C. Sikorski, Esq., of
                                        Robinson Donovan, P.C.
                                        1500 Main Street, Suite 1600
                                        Springfield, Massachusetts 01115
                                        Phone (413) 732-2301  Fax (413) 785-4658
                                        BBO No.:  461970

CERTIFICATE OF SERVICE

I, John C. Sikorski, Esq., hereby certify that on this 18th day of February, 2005, I served a copy of the above upon the parties in the action by mailing, postage prepaid, to counsel, Steven R. Weiner, Esq., 920 Main Street, Springfield, MA 01103.

Subscribed under the penalties of perjury.


                                        */s/ John C. Sikorski*
                                        John C. Sikorski, Esq.

392325