UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSE QUINONES,                )
      Plaintiff,             )
                                    )
                                    )
                                    )
v.                            )   Civil Action No. 04-30111-KPN
                                    )
                                    )
                                    )
HOUSER BUICK,                 )
      Defendant              )


MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Document No. 11)
July 14, 2005

NEIMAN, U.S.M.J.

      Jose Quinones ("Plaintiff"), a former automotive technician at Houser Buick ("Defendant"), is suing Defendant for national origin-based employment discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and its state counterpart, Mass. Gen. L. ch. 151B, § 1 *et seq.* ("chapter 151B"). Although Plaintiff voluntarily left his job in March of 2003, he alleges that Defendant's illegal discrimination against him as a person of Hispanic origin resulted in the "wrongful payment of wages." Defendant has moved for summary judgment on Plaintiff's claims and, with the parties' consent, the matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons described below, Defendant's motion will be allowed.

I. BACKGROUND

The following undisputed facts are stated in the light most favorable to Plaintiff, the non-moving party. *See Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir. 2005).[1]  Plaintiff worked for Defendant as an automotive technician on three separate occasions between February 27, 1990, and the day he quit, March 28, 2003. At all relevant times, Plaintiff worked under Kevin O'Connor ("O'Connor"), Defendant's collision repair manager.  Plaintiff claims that during his third tenure of employment, which began on March 25, 1999, Defendant discriminated against him on the basis of his national origin.

When Plaintiff began his third tenure, he was placed, at his request, on a flat rate pay scale.  In other words, Plaintiff was not paid on an hourly basis but, rather, was paid a specific rate when he completed a particular job.  In his affidavit, Plaintiff claims that under the flat rate system he earned approximately $28,000 per year in 2000 and 2001 and approximately $30,000 in 2002.  Plaintiff further alleges, however, that

---

[1] In creating this factual summary, the court has been frustrated by several significant deficiencies in Plaintiff's pleadings.  For one thing, Plaintiff has failed to submit "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts.  Accordingly, the court has deemed "admitted" a number of facts set forth in Defendant's own counter-statement.  *See id.*  In addition, Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Document No. 14, hereinafter "Plaintiff's opposition memorandum") -- which is one page in length -- makes only scant mention of deposition facts and cites no case law.  True, Plaintiff has also submitted an affidavit (Document No. 15) through which, it appears, he attempts to meet several of Defendant's assertions.  But the affidavit is not mentioned in Plaintiff's opposition memorandum and its significance, therefore, is unclear.  Nonetheless, the court has considered the affidavit along with Plaintiff's other submissions.

Wayne Barnes ("Barnes"), a white co-worker, was paid $1,000 per week under the flat rate system, or about $52,000 per year. Hence, Plaintiff asserts, he is the victim of national origin-based discrimination. For its part, Defendant claims that Barnes had a better understanding of the flat rate system than did Plaintiff and, therefore, benefitted more than Plaintiff.

Plaintiff's complaint, initially filed in state court on May 17, 2004, lists two causes of action: a Title VII pay-based national origin claim (Count I) and a parallel claim under chapter 151B (Count II). On June 10, 2004, Defendant removed the action to this court and in due course filed the instant motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although some facts may be disputed by the parties, the summary judgment standard requires that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Substantive law governs materiality, and only disputes over facts that might affect the outcome of the trial are material. *Id.* To avoid summary judgment, a plaintiff must make a sufficient showing of the elements essential to the case on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III. DISCUSSION

Typically, employment discrimination cases alleging disparate treatment center on the familiar three stage, burden-shifting framework first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and further detailed in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999); *Benham v. Lenox Sav. Bank*, 118 F. Supp. 2d, 132, 141 (D. Mass. 2000).[2] Here, however, neither party mentions the burden-shifting framework. Rather, both appear to jump directly to the critical third stage of the analysis. The court will do likewise after pausing briefly at stages one and two.

At the first stage of the burden-shifting analysis, a plaintiff must establish a *prima facie* case of disparate treatment by a preponderance of the evidence. *See Thomas*, 183 F.3d 38, 56 (1st Cir. 1999). To do so, he generally must show that (1) he is a member of a protected class, (2) he was qualified for the job, (3) he suffered an adverse employment action, and (4) that the position remained open or was filled by a person with similar qualifications. *See Kosereis v. Rhode Island*, 331 F.3d 207, 212-13

---

[2] It is noted that the essence of this three-step analysis applies to both Title VII and chapter 151B cases. *See Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir. 2000) ("In our view, federal and Massachusetts law are now generally aligned. . . .") (citing *Reeves and Abramian v. President & Fellows of Harvard College*, 731 N.E.2d 1075, 1084-86 (Mass. 2000)). *See also Joyal v. Hasbro, Inc.*, 380 F.3d 14, 16 (1st Cir. 2004) ("Massachusetts case law uses a burden-shifting device akin to federal law to force the employer to supply reasons for his action once an easily made *prima facie* case is established."). The court, therefore, will address Plaintiff's state and federal claims together and refer principally to federal case law.

(1st Cir. 2003). The First Circuit has variously "described the *prima facie* case as a 'small showing' that is 'not onerous' and is 'easily made.'" *Id.* at 213 (citations omitted).

Here, the court will assume that Plaintiff has established a *prima facie* case. To be sure, the fourth criteria, which focuses on the plaintiff's "position," does not square fully with this disparate treatment case; as described, Plaintiff's main assertion is that he was treated differently with regard to pay than Barnes, a similarly-situated white employee. The First Circuit, however, "explicitly reject[s] the notion that plaintiffs in disparate treatment cases are required to demonstrate that they were treated differently as part of their *prima facie* case." *See id.* "Rather," the court explained, "'the time to consider comparative evidence in a disparate treatment case is at the third step of the burden-shifting ritual, when the need arises to test the pretextuality *vel non* of the employer's articulated reason for having acted adversely to the plaintiff's interests.'" *Id.* (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999)). Thus, as in *Kosereis*, the court will assume Plaintiff has made a *prima facie* case.

Once the plaintiff makes a *prima facie* showing, the burden shifts to the defendant at the second stage of the analysis to produce a valid, nondiscriminatory reason or reasons for the adverse action. *See Thomas*, 183 F.3d at 56. Defendant has done so here. It asserts that Barnes had a better understanding of the flat rate system than did Plaintiff and, therefore, benefitted more than Plaintiff did in terms of pay.

At the third stage of the analysis, it becomes the plaintiff's burden to establish by a preponderance of the evidence "that the legitimate reasons offered by the defendant

were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (citation and internal quotation marks omitted).  At the summary judgment stage, this means that the plaintiff "must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was [national origin] discrimination." *Thomas*, 183 F.3d at 62 (citation omitted).  Put differently, the plaintiff "must produce evidence to permit a reasonable jury to conclude both that disparate treatment occurred and that the difference in treatment was because of [national origin]." *Id.*

In the court's view, Plaintiff cannot meet his third-stage burden.  First, as indicated *supra* at n.1, his opposition memorandum is woefully deficient.  It consists of a mere five sentences, none of which, in the court's view, raises the specter of pretext or national origin discrimination.  At best, Plaintiff makes the conclusory assertion that "[i]t is clear from the Depositions taken of the Plaintiff, the witnesses [sic], that the Plaintiff has made a case for damages indicating that he, the only Hispanic employee who was at a higher level job was paid at a different rate than the same position held by a Caucasian." (Plaintiff's opposition memorandum at 1.)  However, it is not the court's responsibility -- let alone within its power -- to cull the entire discovery record looking for facts which might convert such a bald assertion into a triable issue.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.").  That burden is Plaintiff's alone.  *See* Fed. R. Civ. P. 56(e) (placing onus on nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  *See*

6

*also Gonzalez-Pina v. Rodriguez*, 407 F.3d 425, 431 (1st Cir. 2005) ("[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.") (citation and internal quotation marks omitted).  In the court's view, Plaintiff has failed to carry that burden.

Moreover, in the very first sentence of his opposition, Plaintiff practically concedes Defendant's second-stage point: that employees such as Barnes who better understood the flat-rate system received more benefits from it.  As Plaintiff puts it: "employees who knew how to negotiate and/or were aware of their potential benefit to . . . Defendant were able to get more advantageous working arrangements then [sic] other employees." (Plaintiff's opposition memorandum at 1.)  Such an acknowledgment on Plaintiff's part eviscerates any hint of pretext.

Last but not least, the scant (seven) deposition pages Plaintiff does attach to his opposition memorandum fail to help his cause.  The first page (Plaintiff's Exhibit 1) purportedly comes from the deposition of a co-employee.  However, it says nothing of substance and it is unclear why Plaintiff included it.  The second and third pages (Plaintiff's Exhibit 2) are from *Plaintiff's* deposition and aver simply that he would often help out other employees.  Again, this fact adds nothing to the Plaintiff's case or, for that matter, the court's analysis.

Still, Plaintiff asserts in the next three deposition pages he attaches (Plaintiff's Exhibit 3) that yet another co-employee testified that Plaintiff was the only non-white body shop worker.  The deponent, however, never said that.  Rather, the co-employee

merely stated that three people worked in the office and five worked in the shop and he identified only one of the shop workers as being white. (See Plaintiff's Exhibit 3 at 10-12.) Even if the co-employee had stated what Plaintiff asserts he did, that particular "statistic" would make no difference. *See Rodriguez v. Smithkline Beecham*, 224 F.3d 1, 7-8 (1st Cir. 2000) (eschewing reliance on plaintiff's gender-based employment figures in pretext analysis where "the numbers are not provided in a context which would lend them probative value in a statistical sense"). *See also Kosereis*, 331 F.3d at 213 (noting that "[t]he ultimate touchstone of the *McDonnell Douglas* analysis is whether the employer's actions were improperly motivated by discrimination").

Finally, the last deposition page Plaintiff attaches (Plaintiff's Exhibit 4), which also comes from his own deposition, appears to indicate simply that he *felt* he was more experienced and produced higher quality work than Barnes. Unfortunately for his cause, Plaintiff's subjective beliefs are of no moment. *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001) (observing that plaintiff's subjective belief that she is being discriminated against "does not, without more, demonstrate pretext"); *Diaz v. Crowley Liner Servs., Inc.*, 281 F. Supp. 2d 240, 249 (D.P.R. 2003) (holding that discrimination claim cannot be based only on plaintiff's subjective beliefs). In a similar vein, Plaintiff's self-serving affidavit (and the scant pages he attaches thereto), to the extent it may be read to contradict the deposition testimony he cites, adds nothing to the court's third-stage analysis. *See Jean v. United States*, Civil Action No. 00-11296-DPW, 2002 WL 31399129, at *3 (D. Mass. Oct. 23, 2002) ("[A] party cannot create a material issue of disputed fact through a self-serving affidavit that conflicts with his

deposition testimony without explaining the reason for the discrepancy.") (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)).

Once an employment discrimination case reaches the third-stage of the *McDonnell Douglas* analysis, it is often a close call whether or not to grant summary judgment. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000) (observing that "courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent") (citation omitted). This case is not close. Plaintiff has utterly failed to produce *any* evidence which might permit a reasonable jury to conclude both that Defendant engaged in disparate treatment and that the difference in treatment was because of Plaintiff's national origin.

## IV. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is ALLOWED.

IT IS SO ORDERED.

DATED: July 14, 2005

/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge
